# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN C. DUGGER, JR., as | : | |
| Personal Representative of the Estate of | : | |
| JOHN C. DUGGER, SR., et al. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-16-3912 |
| | : | |
| | : | |
| AIR & LIQUID SYSTEMS | : | |
| CORPORATION, as successor in interest to | : | |
| Buffalo Pumps, Inc., et al. | : | |

## MEMORANDUM

In this products liability case, the estate of John C. Dugger and others have sued various manufacturers and distributors of asbestos-containing products and insurer Metropolitan Life Insurance Co. (Compl., ECF No. 2; Mot. for Remand Mem. Law, ECF No. 338-1, 2). The plaintiffs filed suit in the Circuit Court for Baltimore City on October 26, 2016. (Compl.). On December 7, 2016, one defendant – Crane Co. – removed the case to the United States District Court for the District of Maryland. (Notice of Removal, ECF No. 1). The plaintiffs moved to remand the case to state court on January 6, 2017. (Mot for Remand, ECF No. 338). Crane Co. responded, (Resp. in Opp'n to Mot. for Remand, ECF No. 351), and the plaintiffs replied, (Reply, ECF No. 355).[1] No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the court will deny the plaintiffs' motion for remand.

---

[1] On January 23, 2017, Crane Co. also filed a supplemental memorandum in opposition to the motion for remand. (Supplemental Mem. Law, ECF No. 352). This memorandum highlights a recent Fifth Circuit opinion, *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017), which Crane Co. believes further supports its position.

1

## BACKGROUND

John C. Dugger, Sr. ("Dugger") served in the United States Navy during the 1960s. On November 2, 2015, he was diagnosed with malignant pleural mesothelioma; according to the plaintiffs, he contracted this form of cancer "as a result of being exposed to and inhaling asbestos-containing dust while serving in the United States Navy." (Mot. for Remand Mem. Law 1–2). Dugger died on February 17, 2016; after his death, his estate filed suit in state court based on various causes of action, including state common-law products liability claims of strict liability and negligence against the manufacturers and distributors of asbestos-containing products. (*Id.*). Crane Co. allegedly manufactured and sold rope and valves to the Navy that were designed to be used with asbestos-containing packing, rope, and gaskets. (*Id.* 2). The complaint alleges Crane Co. failed to warn Dugger about the hazards associated with asbestos-containing products and/or products designed to be used with asbestos-containing components. (*See id.* 2–3).

According to Crane Co., removal is proper under 28 U.S.C. § 1442(a)(1), partly because Crane Co. has successfully invoked the government contractor defense to tort liability. (Notice of Removal ¶¶ 3, 7). To support its claim that this federal defense applies, Crane Co. has submitted affidavits from Anthony D. Pantaleoni ("Pantaleoni"), David P. Sargent, Jr. ("Sargent"), and Dr. Samuel A. Forman ("Dr. Forman") as attachments to its notice of removal. (Notice of Removal Exs. B, C, D, ECF Nos. 1-3, 1-4, 1-5).

## LEGAL STANDARD

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), a defendant may

remove a case to federal court if that defendant establishes (1) the defendant is either a federal officer or a "person acting under that officer," 28 U.S.C. § 1442(a)(1); (2) a "colorable" federal defense to the plaintiff's claims; and (3) the suit is "*for* a[n] act under color of office," which requires a causal nexus "between the charged conduct and asserted official authority." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209–10 (4th Cir. 2016) (quoting *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)).[2] One of the purposes of federal officer removal is to provide a federal forum for a federal defense. *Id.* at 210 (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Accordingly, a defendant's use of § 1442(a)(1) "should not be frustrated by a narrow, grudging interpretation" of the statute. *See Willingham*, 395 U.S. at 406–07; *see also Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989) ("[T]he right of removal conferred by § 1442(a)(1) is to be broadly construed."). To defeat a motion for remand, a defendant need only plausibly allege the existence of each element under § 1442(a)(1). *See Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *6 (D. Md. Mar. 7, 2013), *aff'd sub nom. Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014); *cf. Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199–200 (4th Cir. 2008) (a notice of removal need not "meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint").

## ANALYSIS

---

[2] 28 U.S.C. § 1442(a) provides, in relevant part, "A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." Such a defendant may remove the case without the consent of its codefendants. *See Citrano v. John Crane–Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 (D. Md. 2014).

On at least two separate occasions, the district court in Maryland has examined asbestos products-liability claims against Crane Co. similar to those here. In both of those cases, the court has denied a motion for remand after considering evidence similar to the evidence Crane Co. now offers. *See Joyner*, 2013 WL 877125; *Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778 (D. Md. 2016). Circuit courts also have examined similar claims against Crane Co. and similar evidence, and they also have concluded removal was permissible. *See, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014); *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014). For the reasons explained below, the court also will deny the motion for remand here.

Although Crane Co. must satisfy all three elements under § 1442(a)(1), the primary issue is whether it has raised a colorable federal defense. Accordingly, the court will examine that issue first.

### a. Colorable Federal Defense

In order for removal to be proper, Crane must establish a "colorable" federal defense. The defense in question here is the government contractor defense, which precludes state-law tort liability for a contractor's failure to warn if (1) the federal government exercised its discretion and approved certain warnings for the products supplied by the contractor; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government.[3] *Rhodes*, 210 F. Supp. 3d at 781. Although the government contractor defense may apply in failure-to-warn

---

[3] The Supreme Court originally explicated the government contractor defense in *Boyle v. United Techs. Corp.*, holding that design defects in military equipment cannot give rise to state-law tort claims where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. 500, 512 (1988). Only where the contractor's obligations to the government conflict with state law may the contractor employ the defense. *See id.* at 507–08. In *Ripley*, the Fourth Circuit clarified that the government contractor defense may also be invoked in failure-to-warn cases.

4

products liability cases, *see Ripley*, 841 F.3d at 210–11, the plaintiffs claim the defense as raised by Crane Co. is not "colorable," (*see* Mot. for Remand Mem. Law 21).

A "colorable" federal defense is one that is plausible. *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010). To prove the government contractor defense is "colorable," Crane Co. must allege facts that demonstrate the defense plausibly shields it from liability for its alleged failure to warn Dugger of the dangers associated with asbestos exposure. *See Joyner*, 2013 WL 877215, at *8. "Proof of a 'colorable' federal defense thus does not require the defendant to 'win his case before he can have it removed' nor even establish that the defense is 'clearly sustainable.'" *Ripley*, 841 F.3d at 210 (quoting *Willingham*, 395 U.S. at 407). That is, a court need not "dissect the facts" or "weigh the quantum of evidence," because "[i]t is the sufficiency of the facts stated – not the weight of the proof presented – that matters." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782–83 (E.D. Pa. 2010); *see also Rhodes*, 210 F. Supp. 3d at 782 (D. Md. 2016) ("Cases dwelling on the exactness of 'proof' or 'evidence' to support the defense are not persuasive.").

Crane Co. has plausibly alleged the three elements of the government contractor defense. First, it has plausibly alleged the government exercised its discretion and approved warnings (if any) for products that Crane Co. supplied to the Navy. In its notice of removal, Crane Co. states that "the Navy provided Crane Co. with precise specifications regarding its products." (Notice of Removal ¶ 11). Sargent, a retired Rear Admiral of the United States Navy, stated in his affidavit that "the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied . . . for ultimate use aboard Navy ships." (Sargent Aff. ¶¶ 1, 58). Sargent further attested that "[m]anufacturers of

components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy." (*Id.* ¶ 60). This satisfies the first element of the defense. *See Joyner*, 2013 WL 877125, at *8 & n.7.

Crane Co. also has plausibly alleged that warnings it provided conformed to federal specifications or that its failure to provide warnings was attributable to governmental regulations. In its notice of removal, Crane Co. claimed it "delivered products that conformed to [the Navy's] specifications." (Notice of Removal ¶ 11). Its affidavits support this statement. Pantaleoni, who served as Crane Co.'s Vice President of Environment, Health and Safety at the time he made his affidavit in 2011, attested that Navy specifications "governed all aspects of a piece of equipment" and that "[a]ll equipment supplied by Crane Co. to the Navy was built in accordance with the Navy specifications." (Pantaleoni Aff. ¶¶ 5–6). Sargent attested that suppliers like Crane Co. "would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy." (Sargent Aff. ¶ 58). Valve manufacturers like Crane Co., Sargent added, "were required to comply with technical specifications in all details in order for the Navy to accept the equipment." (*Id.* ¶ 28). Crane Co. has plausibly alleged the second element of its defense.

Crane Co. also has plausibly alleged the third element of its defense. Crane Co. only

needed to warn the government about asbestos hazards if Crane Co. knew more than the Navy about those hazards. Accordingly, Crane Co. satisfies this element if it plausibly shows the Navy knew as much or more about asbestos hazards than it did. *See Rhodes*, 210 F. Supp. 3d at 785. In its notice of removal, Crane Co. claims the Navy "possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers, such as Crane Co." (Notice of Removal ¶ 11). In his affidavit, Dr. Forman supports that assertion. For instance, he stated that "at least by the 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos dust inhalation exposure." (Forman Aff. ¶ 26). This suffices to plausibly allege the third element. *See Rhodes*, 210 F. Supp. 3d at 785.[4]

For these reasons, Crane Co. has sufficiently established a colorable federal defense.

b. Acting Under / Causal Nexus

In addition to establishing a "colorable" federal defense, Crane Co. also has plausibly alleged the existence of the other two prongs under § 1442(a)(1). First, it has sufficiently alleged it was a "person" that "acted under" the direction of a federal officer. Crane Co. is a "person" for § 1442(a)(1) purposes. *See, e.g.*, *Hagen*, 739 F. Supp. 2d at 776 n.6. And a government contractor "acts under" a federal officer if it manufactures products for the United States subject to the "strict control" or "close supervision" of the federal government. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 153–54 (2007); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998). For the same reasons discussed above, Crane Co. has plausibly alleged

---

[4] The plaintiffs also suggest the government contractor defense is not available here, because the products supplied by Crane Co. to the Navy were "standard, stock equipment" that were not specially manufactured pursuant to government specifications. (Mot. for Remand 17–18). *See In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992) (concluding such an exception exists). Even if this exception exists, however, the plaintiffs cite no evidence to support their claim that the products at issue here were "standard, stock equipment." Crane Co., on the other hand, has sufficiently alleged that the products it provided to the Navy were specially made for the federal government pursuant to Navy specifications. *See, e.g.*, *Joyner*, 2013 WL 877125, at *7–9. At best, then, there is a factual dispute, which is not enough to grant the motion for remand. *See Hagen*, 739 F. Supp. 2d at 782–83.

that it was acting under the strict control of the federal government when it manufactured and sold its products to the Navy. *See Hagen*, 739 F. Supp. 2d at 784–85 ("[A]ny defendant who satisfies the colorable defense requirement will necessarily meet the acting under requirement of Section 1442(a)(1) as well."). In its notice of removal, for example, Crane Co. states that its products "were designed and manufactured in accordance with precise contracts and specifications approved by the Navy," (Notice of Removal ¶ 9), and that the Navy exercised "strict control" over the design and manufacture of these products, (*id.* ¶ 10). Its affidavits further support that conclusion. For instance, Pantaleoni attested that the manufacture of equipment for the Navy "was governed by an extensive set of federal standards and specifications" and that "[a]ll equipment supplied by Crane Co. to the Navy was built in accordance with the Navy specifications." (Pantaleoni Aff. ¶¶ 5–6).

Lastly, Crane Co. has satisfied the "causal nexus" requirement, because it sufficiently established the government contractor defense. *See Joyner*, 2013 WL 877125, at *9 (The "causal nexus" requirement "is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense."); *accord Rhodes*, 210 F. Supp. 3d at 785.[5]

## CONCLUSION

---

[5] The plaintiffs claim that Crane Co. has failed to satisfy what it describes as a fourth element outlined in *Ripley*. As the Fourth Circuit noted in *Ripley*, the government contractor defense "only applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." 841 F.3d at 210 (citing *Boyle*, 487 U.S. at 507–09). According to the plaintiffs, this means the government contractor defense only applies if Crane Co. proves "that the applicable federal contracts at issue for the products to which Mr. Dugger was exposed included warning requirements (or precluded warnings) that were significantly in conflict with those which might be imposed upon Crane Co. by state law." (Mot. for Remand Mem. Law 23) (citing *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990)). The Second Circuit precedent cited by the plaintiffs appears to impose a "more onerous" standard with respect to the government contractor defense than the standard embraced by other circuits. *Joyner*, 2013 WL 877125, at *8. But even if that more onerous standard were applied here, Crane Co's allegations are sufficient to survive the motion for remand. *See id.*; *see also Cuomo*, 771 F.3d at 116–17 (rejecting the assertion that Crane Co. cannot establish a "colorable" government contractor defense in a failure-to-warn case simply "because it provided no evidence that the Navy prohibited or actively prescribed the content of any proposed asbestos labels").

For the aforementioned reasons, the plaintiffs' motion for remand will be denied. A separate order follows.

5/5/17
Date

/s/
Catherine C. Blake
United States District Judge